IN THE
UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MARYLAND

BARBARA SACHER
2975 Emerald Chase Drive
Herndon, VA 20171,

     *Plaintiff,*

vs.                                            Civil Action # _____

THE MITRE CORPORATION
300 Sentinel Drive
Suites 500 & 600
Annapolis Junction, MD 20701

     Resident Agent:
     THE CORPORATION TRUST, INC.
     2405 York Road, Suite 201
     Lutherville-Timonium, MD 21093-2264,

     *Defendant.*

-o0o-
**COMPLAINT**

**COUNT I**
**RELIGIOUS DISCRIMINATION**
**TITLE VII, 42 U.S.C. § 2000e *et seq.***
(Jury Trial Requested)

Plaintiff, BARBARA SACHER (hereinafter "Plaintiff"), by and through her attorneys, Francis J. Collins, F.J. Collins Law, LLC and P. Matthew Darby, Darby Law Group, LLC, hereby sues Defendant THE MITRE CORPORATION (hereinafter "MITRE"), and, in support thereof, states as follows:

1

## I. INTRODUCTION

1.      Plaintiff was employed by MITRE from 1990 to 1996 and again from 2008 to November 2021.

2.      Plaintiff was one of a large group of employees MITRE terminated because she and the other employees refused to comply with a COVID-19 vaccine mandate imposed by MITRE.  Plaintiff was a long-term employee with excellent credentials and job performance as a Human Centered Engineer, Lead, and as part of Plaintiff's duties provided important services to the U.S. government.  MITRE instituted its own internal company-wide vaccine mandate on August 16, 2021, two months before the federal mandate through President Biden's executive orders. MITRE migrated from testing for negative COVID results before entering MITRE spaces to mandatory vaccine compliance before entering company spaces. In August 2021, MITRE instituted a company-wide vaccine mandate, requiring Plaintiff to submit proof of vaccination against COVID-19 as a condition of employment or apply for and obtain an approved medical or religious exemption.  All MITRE employees had to upload proof of vaccination by November 15, 2021.  All religious and medical exemptions had to be approved by November 21, 2021 after which the employee was marked for immediate termination.

3.      During the fall of 2021, Plaintiff applied for an exemption to the MITRE mandate, seeking reasonable accommodations of her sincerely held

religious beliefs, practices, and/or observances.

4.     MITRE refused to grant an exemption to the Plaintiff and nearly all of the employees who requested an exemption, in violation of Plaintiff's rights under Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e, *et seq.*

5.     As more fully described below, Plaintiff has bona fide religious beliefs that conflict with MITRE's employment requirement—that employees be vaccinated against COVID-19 and upload proof of that vaccination (the "vaccine mandate") to MITRE's server.  Plaintiff informed MITRE of her bona fide religious beliefs that conflict with the vaccine mandate and requested a religious accommodation—specifically the right to forego the COVID-19 vaccines, and that request was refused.  Plaintiff and many other employees were fired for not complying with MITRE's vaccine mandate and was not offered reinstatement after MITRE ended the vaccine mandate.  Plaintiff was considered ineligible for reinstatement because she failed and refused to comply with MITRE's vaccine mandate, even long after the mandate was rescinded or should reasonably have been rescinded.  MITRE fully understood at the time, that the federal mandate to comply by November 2021 was challenged by the courts, and an injunction was in place. The federal mandate was moved to January 2022, and MITRE was not compelled to enforce the vaccine mandate.  MITRE pursued its own internal business rules to remove its employees.

## II. JURISDICTION

6.    Plaintiff has fulfilled the jurisdictional requirements of Title VII by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and receiving a Right to Sue letter from EEOC, in compliance with 42 U.S.C. § 2000e-5(f)(1).  MITRE is subject to the provisions of Title VII, as it employs more than fifteen employees under 42 U.S.C. § 2000e(b). This Court has original subject matter jurisdiction over this action, as the claims therein arise under the laws of the United States, pursuant to 28 U.S.C. § 1331.

7.    At all times relevant to this case, MITRE had at least seven separate business locations in the State of Maryland, not including the various locations of employees who continued to work remotely for MITRE within the State of Maryland.

## III. PARTIES

8.    Plaintiff was, at all relevant times, an employee of MITRE until she was fired or constructively fired on or about November 22, 2021.

9.    MITRE is a large organization, employing thousands of individuals across the country.  It is considered a Federally Funded Research and Development Center ("FFRDC") and receives all or virtually all of its funding from the U.S. government.  MITRE operates the federal government's Health FFRDC on behalf of sponsors across the Department of Health and Human Services.  The federal government pays MITRE billions of dollars each year to support its operations.

MITRE sees itself as a leader in public health and seeks federally funded research and development opportunities. During the height of the COVID-19 epidemic, the federal government had tasked MITRE to stand up a COVID taskforce to work with industry, government, UARCs, and FFRDCs to provide policy recommendations and tools to improve COVID response and address disinformation/misinformation surrounding the COVID and vaccinations. MITRE had vested interest in ensuring that its recommendations and tools provided were implemented and promulgated in the government. As such, it stands in a direct conflict of interest when it recommends public health programs to the federal government and then benefits from those programs. In the context of this case, that conflict of interest colored its decision-making. MITRE was more interested in gaining recognition and currying favor with the then current Executive Branch of the Federal Government than it was in protecting the religious freedoms of its employees.

## IV. FACTUAL ALLEGATIONS

### A. The Job of the Plaintiff

10. When the COVID-19 pandemic was declared in and around March 2020, MITRE instituted a work-at-home policy for most of its employees. MITRE was able to continue doing business in much the same way it had been doing prior to the pandemic. Many of its employees already worked full-time or part-time from home even before the pandemic. Furthermore, MITRE had a long-standing telework option for its employees. It was a unique feature of the company that drew many

5

people to apply and work for the company.  Many employees however, had their telework agreement modified in order to allow MITRE to enforce its mandatory policy - forcing its employees to be in the office and therefore to be vaccinated. Other employees worked at client sites, such as Department of Defense buildings, and continued to appear at those sites, employing the required masking, testing, and social distancing protocols of the federal government.  In short, MITRE was able to continue billing and performing its services for the federal government with little or no interruption.  The need to enter MITRE worksites, as opposed to working from home or at a client site, was minimal at most.  The client worksites did not impose a vaccine mandate and those employees that did work at a client worksite were able to continue work as normal, with the minor exception of wearing a mask, occasional COVID-19 testing, and social distancing, which Plaintiff was willing to do.  No MITRE client (various departments of the U.S. government) insisted on MITRE employees being vaccinated and the government employees at those sites, and who worked in close proximity with the Plaintiff, were not required to be vaccinated. Regardless, under Title VII, all vaccine mandates by employers must include an exemption process for employees who oppose vaccination because of the employee's religious beliefs.

11.    The physical requirements of the job of the Plaintiff are largely limited to desk work and operating a computer.  Plaintiff was willing and able to engage in measures understood to ameliorate the risk of spreading COVID-19 such as working

from home, wearing a mask, social distancing, and undergoing frequent COVID-19 testing. Her job generally could be performed away from other people. Plaintiff rarely, if ever, engaged in meetings with the general public and all of her meetings with co-workers and the client's workers could be done either remotely or while utilizing the above-described disease prevention techniques.

12.    In October 2021 and into November 2021, MITRE required all employees to become "fully vaccinated." MITRE did not consider whether its employees were working remotely at home, at a MITRE site, or at a client site. MITRE did not consider whether vaccination impacted the employee's ability to perform assigned work, interact with co-workers, accomplish work goals, or otherwise derive a benefit from the vaccination. MITRE ignored the fact that the government workers with whom Plaintiff interacted and worked were not necessarily vaccinated. Plaintiff was not engaged in frequent contact with the public. Plaintiff was not at greater risk than the public at large for contracting or spreading COVID-19.

13.    Plaintiff's ability to perform the essential functions of her job was not impaired by her status as unvaccinated. There was no objectively reasonable basis for MITRE to believe that Plaintiff was unable to carry out the essential functions of her job. With COVID-19 precautions in place, she could safely perform her job function as she had been doing for the prior 20 months.

14.    COVID-19 is not an occupational hazard that has any particular

relationship to the job duties of the Plaintiff. Rather, it is a disease or medical condition that arises as a result of living in the 21st century, not unlike other communicable diseases such as the flu, the common cold, HIV, and leprosy. Plaintiff's job duties did not bring her into contact with immuno-compromised medical patients.

### B. MITRE'S Vaccine Mandate

15.    On October 11, 2021, MITRE CEO Jason Providakes announced, on his weekly video call with all staff, that MITRE would adopt a mandatory vaccination policy for all its employees as a condition of employment, effective on or about November 22, 2021. Mr. Providakes contended at that time that the company mandate was in response to the executive order. When discussing religious and medical exemptions, Mr. Providakes called them "two very limited circumstances" and required employees who had already submitted exemption requests to resubmit so that they may be put through a "rigorous process."

16.    Later that day, Mr. Providakes and Kathleen Federico, Senior Vice President, emailed MITRE's staff further outlining the new vaccination policy. Under that policy, vaccinated employees were required to upload proof of their vaccination into MITRE's Workday platform between October 25, 2021, and November 15, 2021. The policy was updated to require unvaccinated employees to upload proof of vaccination no later than November 21, 2021. The updated policy further required that employees seeking an exemption from the mandate because of

a documented medical condition, disability, or sincerely held religious belief submit a request for reasonable accommodation no later than October 22, 2021. If MITRE granted an employee reasonable accommodation, the employee could submit proof thereof to Workday to fulfill the requirements of the new policy.

## C. CEO Jason Providakes' Public Statements

17.    Mr. Providakes made statements disparaging employees who objected to the vaccine mandate, created a hostile work environment for those same employees, namely, anyone who did not want to be vaccinated, by expressing contempt for employees who did not want to be vaccinated. In the October 11, 2021 video call, Mr. Providakes stated that he could "live with" the outcome, if MITRE lost 10 percent of its employees due to noncompliance with its vaccine requirement.

18.    On October 18, 2021, in another weekly call with staff, Mr. Providakes made statements discouraging employees from seeking exemptions to the vaccine mandate. With respect to medical exemptions, Mr. Providakes stated, "cautionary note … there is a very narrow window for that." With respect to religious exemptions, Mr. Providakes stated, "If your religion does not have a vaccination [sic], that says do not do vaccinations, it can be very hard to put together a case. You cannot just wake up in the morning and decide the religious conviction that you automatically get an exemption, so there is a high bar to process that goes through [sic] regarding a firm belief on that." Referring to MITRE's duty to accommodate, Mr. Providakes stated, "…And once those two things are done, and you do get an

exemption, it is something called reasonable accommodation.  Be clear on what a reasonable accommodation means.  It means you are not coming into the MITRE space.  It means you will be assigned work appropriate with what you can do remotely, at home, which is really important for that one.  Your role may change as well.  That is what reasonable accommodation, quote, means for a private company and a private employer."

19.    In these October 18, 2021, statements, Mr. Providakes mischaracterized employees' protections under Title VII and MITRE's obligation to provide reasonable accommodations.  Mr. Providakes also indicated to employees that any requests for reasonable accommodation would be futile.  Mr. Providakes further suggested that MITRE would retaliate against any employees who sought and obtained reasonable accommodation.

20.    In all of Mr. Providakes' video addresses to staff, he displayed contempt for employees who objected to receiving the vaccine, speaking about them in a condescending tone.

21.    At no time did MITRE provide any significant level of transparency regarding its internal policies and procedures for employees to apply for exemptions or about its internal policies and procedures for granting exemptions.  When it denied the exemptions to the Plaintiff, MITRE failed to explain its reasoning and provided an unsigned denial letter that did not provide a right to appeal.  At no time did

MITRE ever articulate that it was denying the accommodation request because Plaintiff was motivated by reasons that MITRE did not consider religious in nature.

### D. Plaintiff's Request for Exemption - Religious Accommodation

22.    Plaintiff's Director advised Plaintiff and other employees working under him that all MITRE employees would have to receive the vaccine ("get injected") or they would be terminated. He did not offer the possibility of a religious exemption.

23.    Plaintiff is Jewish. Being Jewish forms her belief system and her way of life. To be a Jew is not just to believe in one G-d and to follow the cultural norms of a religion. It is to believe in the Torah and its teachings, the Jewish books of moral and ethical laws, and to be a part of a people that have existed for thousands of years. The Torah guides her way of life and her sense of morality. It is from its teachings that she forms value judgments that affect her entire life and decisions about life. As stated to MITRE at the time of her termination, directly because of her religious convictions, she considers the COVID-19 vaccines immoral. Her reasons for this conviction are that her body is an instrument of G-d and that no one should be coerced into putting something into their body when they have a moral objection to doing so. Her moral objection stems from her belief that just as G-d breathed life (a soul) into Adam when he was created so each person's body has received a soul from G-d that was sent into him/her at their time of conception. Her job is to maintain this vessel (her body) in the best condition she can so that her soul

can achieve what it needs to do on this this earth – to make it a better place, and a place that G-d can dwell in.  To that end, she works to stay physically as well as spiritually healthy.  Aside from what one puts into their body, Judaism also has laws and guidance on many other aspects of one's body (e.g., not tattooing oneself, prayers when one wakes up – i.e., recognizing you have your breath/soul and are alive, even prayers after one finishes in the bathroom – to be grateful you have a healthy body). She uses these prayers as reminders that G-d has given her these gifts of a soul and a body to maintain it, so that she can make the world a more holy place. G-d gives us the ability to make decisions as to what is best for the vessel we have been given.  Being forced to put something into one's body that one feels would be harmful, especially while under duress, goes completely against her belief of maintaining the vessel that G-d has given her.  Furthermore, during the time of the Nazis, Jews were subjected to much antisemitism that began as indignations, grew to coercive acts that took away their livelihoods, and ended with concentration camps and abhorrent medical experimentation.  As a Jew, the idea of forcing a new experimental shot on someone by threatening their livelihood is morally unconscionable.  As the Torah provides her guide for her morals - then as a Jew, her morals and her religion are bound together.  For these reasons she objected to taking the COVID shot.  As a Jew, her belief is that that she has the ability to pray to G-d for guidance in all things.  Plaintiff did that in this case and does it consistently in her life about all important matters.  That prayer influences her life.  Moreover, her

12

religion has many dogmas, doctrines, and moral teachings that influence her life, not the least of which is the Torah. She believes that taking newly developed vaccines such as the COVID vaccine, violates the teachings of the Torah and her personal religiously founded conscience.

24. Plaintiff requested to be exempt from the vaccine mandate, as a reasonable accommodation of Plaintiff's sincerely held religious beliefs. MITRE insisted that employees requesting religious accommodation sign, verify, and submit a particular form that MITRE drafted. Under Title VII, there is no requirement that employees submit such a form in order to be eligible for a religious exemption.

25. Plaintiff submitted her request on the form provided by MITRE. The form that MITRE circulated for use by its employees contained the following statements and requests. It requires that the employee sign a verification as to the employee's religious beliefs. It requires the employee to sign a verification that MITRE will attempt to provide a reasonable accommodation. It requires the employee to sign a verification that the employee understands that accommodation will be denied if it creates an undue hardship for MITRE. It requires the employee to sign a verification that the employee understands that MITRE may periodically review the accommodation to determine later if it would result in an undue hardship.

26. In the form, MITRE threatened to discuss the form with the employee, thereby challenging the employee's sincerity even before MITRE reviewed the request and before MITRE could have obtained an objective basis to believe the

employee was insincere. In the form, MITRE also promised to conduct an interactive process. MITRE never conducted the interactive process, but it did insist on conducting a discussion with the employee about the employee's religious beliefs.

27. MITRE's exemption request form and its practices did not comport with a proper consideration under Title VII of a religious exemption request. MITRE was intent upon denying the requests and began conducting interviews of employees and, without forewarning, began asking them to explain the religious nature of their objection to the vaccine. It began asking the employees to explain the religious dogma, belief, religious texts, or moral basis for the objection. MITRE focused on the sincerity of the employees' beliefs even before it had an objective basis for doubting the employees. The form asked the employees to "include enough detail so that MITRE can determine that these beliefs are sincerely held and consistently guide and influence the employee's life." This demand from MITRE is inherently a violation of Title VII. The events of the pandemic had never been experienced before during Plaintiff's lifetime so that employees were not able to show a prior practice as it relates to beliefs that consistently guide and influence the employee's life with regard to vaccination and pandemics. Title VII does not allow an employer to deny accommodation based on the employer's assessment that the employee's religion does not "consistently guide and influence the employee's life."

28. Despite the ambiguity of MITRE's form, when MITRE's

representative contacted Plaintiff, Plaintiff did explain that Plaintiff' religious beliefs and practices, such as prayer, led her to conclude that vaccination was immoral and not in conformity with her religiously based moral codes.

29.     MITRE denied this Plaintiff and other employees accommodation because, among other illegal considerations, it unilaterally determined that the employee's beliefs were not religious in nature.  But the form that MITRE demanded be used did not ask the Plaintiff to explain how or why her religious beliefs were religious in nature.  At no time after the accommodation request was filed did MITRE engage in a discussion with the Plaintiff to explore whether the objection to the vaccine was religious or secular.

30.     MITRE denied the accommodation requests of all employees who articulated secular reasons in addition to religious reasons despite the fact that binding legal authority is clear that a person may simultaneously have both secular and religiously based opposition to the vaccines and the existence of secular reasons does not take the opposition out from under Title VII protections.

31.     Plaintiff was willing to engage in disease mitigation measures such as masking, social distancing, remote working, or such other measures requested by MITRE.  Plaintiff was not willing to submit to a COVID-19 vaccine but was willing to consider any other reasonable requests by MITRE.

32.     MITRE interviewed Plaintiff over the phone after she submitted her written exemption requests.  During the interview, MITRE showed no inclination to

provide Plaintiff with Plaintiff's requested accommodation and did not discuss alternative accommodations.

33.    MITRE did not accept that employees could have a sincere conscientious and religious objection to the vaccine.  In fact, however, at about that same time, MITRE was aware through media reports and its own investigations that around 20 percent of Catholics and other Christians opposed the COVID-19 vaccination – because of their religious beliefs.  Around the same time, it was reported in the publicly available media that approximately 10% of Americans were of the view that the COVID-19 vaccines conflicted with their religions.  This 10% report correlated with the statement by CEO Providakes that he was willing to lose 10% of MITRE's workforce because of the vaccine mandate MITRE was imposing. It could not have surprised MITRE that a large number of its employees were similarly opposed to the vaccines for religious reasons and if MITRE was acting in good faith and was trying to determine which employees were opposed for secular reasons, rather than religious reasons, it could have made further inquiries, but it chose not to.

34.    MITRE never articulated at the time it was terminating Plaintiff that it viewed Plaintiff's objection to the vaccine as being purely secular and unrelated to religion.  That argument was not raised until months later and is a *post hoc* rationalization rather than MITRE's true reasoning.  Regardless, a coincidence of religious and secular claims in no way extinguishes the weight appropriately

16

accorded the religious one.

35.   Where the accommodation request itself does not provide enough information to enable the employer to make a determination, and the employer has a *bona fide* doubt as to the basis for the accommodation request, it is entitled to make a <u>limited inquiry</u> into the facts and circumstances of the employee's claim that the belief or practice at issue is religious and sincerely held, and that the belief or practice gives rise to the need for the accommodation.  In this case, MITRE did not ask the Plaintiff for a more detailed written explanation of her religious opposition to the vaccine or inform her that it did not understand the religious nature of her opposition.

36.   When Plaintiff filed for a religious exemption, MITRE did not start from the position that her religious views were sincerely held unless there was objective evidence to prove otherwise, as required under Title VII.

37.   Instead, MITRE set out with a plan to undermine, question, dispute, and reject the stated objections articulated by Plaintiff.  MITRE rejected the requested religious exemption without explaining the basis for doing so and without any discussion regarding the religious principles involved, the overlap of those principles with secular concerns, and without any explanation that would have prompted the Plaintiff to address MITRE's concerns.

38.   Title VII defines religion capaciously to include all aspects of religious observance and practice, as well as belief.  An employer may only make limited

inquiries into those beliefs if it has an objective basis to believe the employee is dissembling. If there is an objective basis for undertaking an inquiry into an employee's religious beliefs, the only proper inquiry under Title VII must be limited to: 1. whether the beliefs professed by the employee are sincerely held and, 2. whether they are, in the employee's own scheme of things, religious.

39. Employers have a limited function in determining whether religious beliefs are protected. The determination of what is a "religious" belief or practice is a difficult and delicate task that should not be undertaken by a religiously uneducated employer with no knowledge of the Plaintiff's religion. The scope of what is protected by Title VII is understood to be, without qualification, governed by a highly subjective definition of religion, which examines an individual's inward attitudes towards a particular belief system. By basing its decision on a simple and uniform form that MITRE issued, without any follow-up, MITRE demonstrated antagonism toward religiously motivated employees and intentionally closed its eyes and mind to the good faith statements contained in the religious accommodation request forms.

40. MITRE failed to follow its own internal policies for evaluating a request for religious accommodation. In the case of this Plaintiff, and many other employees, MITRE failed and refused to complete its own form which contains a space for the employer to explain why the employee could not be accommodated. The MITRE form verified by the employee calls on the MITRE representative

18

denying the accommodation to fill out the form explaining when the interactive process took place, the documentation that was presented and reviewed, the accommodation requested, any alternatives considered, a detailed explanation of why the accommodation was denied and the date when that denial was discussed with the employee. MITRE never completed that form and never performed those tasks and thereby did not follow its own policies and procedures. That failure is evidence of MITRE's violation of Title VII.

41. The fact that MITRE interviewed Plaintiff without prior evidence of a lack of sincerity constitutes a violation of Title VII. If MITRE was concerned that Plaintiff was dissembling about Plaintiff's religious beliefs or objecting to vaccination because of purely secular reasons, it never placed Plaintiff on notice of that concern, never asked about such matters, and never articulated that concern to its employees, or anyone else.

**E. Plaintiff's Ability to Work Remotely as a Reasonable Accommodation**

42. The fact that many of its employees worked remotely, even before the pandemic, demonstrates that MITRE could have accommodated Plaintiff with ease.

43. Since the advent of the COVID-19 crisis in March 2020, Plaintiff worked remotely, generally from her home or off-site, on a primarily part-time basis.

44. Prior to March 2020, Plaintiff worked a quarter of the time remotely or off-site. Many other MITRE employees also worked remotely or off-site before COVID-19, underscoring how a return to MITRE could easily be accomplished,

even if the company returned to pre-COVID policies regarding in-person work. MITRE did not return to pre-COVID policies regarding in-person work at any time relevant to this case.

45.    MITRE could have easily accommodated the requests of Plaintiff, who already worked remotely by simply allowing her to continue to do so.  If required to work in-person at some point, MITRE could have accommodated Plaintiff by allowing her to wear a face mask, maintain social distancing, and submit to regular COVID-19 tests.  These mitigation procedures had been in place for 20 months and MITRE was able to accomplish its business objectives.  The clients of MITRE were not insisting that MITRE employees be vaccinated and had not imposed a vaccine mandate of their own.

### F. Plaintiffs' Involuntary Termination of Employment

46.    On or about November 22, 2021, MITRE terminated Plaintiff.  Plaintiff would not have left her employment with MITRE at that time.

47.    After her termination, Plaintiff unjustly suffered economic losses including, but not limited to loss of salary, employment benefits, pension benefits and other perquisites of employment.

### G.  MITRE's malicious intent and intentional disparate treatment

48.    MITRE corporate leadership is anti-religious in its outlook.  As part of this outlook, MITRE corporate leadership has shifted its traditional neutral and unbiased think tank focused on technology development in the defense sector to a

20

more socially acceptable think tank focusing on such things as health and human service projects or more socially conscientious initiatives such as DEI. These focuses have shifted the company from a neutral position to a more politically and religiously polarized environment, where initiatives within the company came into direct conflicts with positions held by religious employees with deeply held beliefs or by conservative employees, or both.

49.     Prior to the summer of 2021, Plaintiff carefully avoided bringing religious and political discussions into the workplace.  Plaintiff performed her duties without regard for her own religious and political leanings.  As a result, MITRE was unaware of Plaintiff's belief systems until that time.

50.     In the fall of 2021, MITRE demanded that all employees expose their religious and political leanings by either being vaccinated or by filing for a religious and/or medical exemption.  The mere act of filing for a religious exemption exposed Plaintiff's religious view and, by implication, political views, to the scrutiny of MITRE management.  Before that time, MITRE had no way of learning the religious and/or political views of its employees.

51.     By forcing employees who opposed the vaccine to divulge that opposition, MITRE essentially "unmasked" its conservative religious employees in a way that left Plaintiff vulnerable to judgment, ridicule, and isolation from her vaccinated coworkers.

52.     MITRE was aware that persons who opposed the vaccination mandate

21

tended to hold conservative religious views.  MITRE knew that, if it issued a vaccination mandate and did not honor religious exemption requests, terminating employees for refusing the vaccination would have a disparate impact on employees holding conservative religious views.  Armed with that knowledge, MITRE intentionally planned the mandatory vaccination policy with the conscious intention of eliminating employees with conservative religious views.  It undertook this plan with malice and/or reckless indifference to the federally protected rights of the employees holding those views.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests relief as follows:

a.  For Plaintiff to be reinstated to her position or a similar one and receive all economic losses resulting from the unlawful termination, including but not limited to back pay, liquidated damages, front pay, reinstatement of accrued benefits including but not limited to sick pay, pension accrual, vacation pay, FICA contributions and other employment benefits, in an amount that exceeds $75,000.

b.  For MITRE to be enjoined from further illegal discriminatory acts against Plaintiff.

c.  For Plaintiff's other non-economic and economic losses both retrospective and prospective as proved at trial including, but not limited to, damages resulting from mental anguish and economic hardship of an amount more than $75,000.

d.  For punitive damages in excess of $75,000,

e. For the cost of this suit and reasonable attorney's fees, including under 42 U.S.C. § 1988; and

f. For other and further relief as may be requisite.

Respectfully submitted,

**F.J. COLLINS LAW, LLC**

*/s/ Francis J. Collins*
Francis J. Collins, Esq.
(Bar # 04272)
(AIS # 8501010118)
fj@fjcollinslaw.com
3015 Wooded Knoll Court, Suite 200
Ellicott City, MD 21042
(240) 799-1212 Telephone
(240) 253-1212 Facsimile

**DARBY LAW GROUP, LLC**

*/s/ P. Matthew Darby*
P. Matthew Darby, Esq.
(Bar #: 05980)
(AIS # 8812150131)
201 International Circle, Suite 500
Hunt Valley, MD 21030
matt@darby-lawgroup.com
(833) 601-7245 Telephone
(667) 770-6660 Facsimile
*Co-Counsel for Plaintiff*

## PRAYER FOR JURY TRIAL

Plaintiff, by her attorneys, Francis J. Collins and P. Matthew Darby, prays to have this case tried by jury.

*/s/ Francis J. Collins*

23

Francis J. Collins, Esq.

*/s/ P. Matthew Darby*
P. Matthew Darby, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of March, 2026, a copy of the foregoing

Complaint was served via the Court's Electronic filing system and emailed to:

Christine Costantino, Esquire
Ray Baldwin, Esquire
Seyfarth Shaw LLP
975 F. Street NW
Washington, DC 20004

*/s/ Francis J. Collins*
Francis J. Collins, Esq.

24